# United States Court of Appeals for the Federal Circuit

―――――――――

**ASCENDIS PHARMA A/S, ASCENDIS PHARMA GROWTH DISORDERS A/S, ASCENDIS PHARMA, INC.,**
*Plaintiffs-Appellants*

**v.**

**BIOMARIN PHARMACEUTICAL INC.,**
*Defendant-Appellee*

―――――――――

2026-1026

―――――――――

Appeal from the United States District Court for the Northern District of California in No. 4:25-cv-05696-YGR, Judge Yvonne Gonzalez Rogers.

―――――――――

Decided: March 26, 2026

―――――――――

GABRIEL K. BELL, Latham & Watkins LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by MICHAEL A. DAVID, SARAH ELIZABETH PROPST, JAMIE UNDERWOOD; ROGER J. CHIN, San Francisco, CA; MICHAEL E. JOFFRE, JOHN CHRISTOPHER ROZENDAAL, DEIRDRE M. WELLS, Sterne Kessler Goldstein & Fox PLLC, Washington, DC.

EDWARD R. REINES, Jones Day, Palo Alto, CA, argued for defendant-appellee. Also represented by DANIEL PAUL

2    ASCENDIS PHARMA A/S v. BIOMARIN PHARMACEUTICAL INC.

JOHNSON, Pittsburgh, PA; GASPER LAROSA, New York, NY; SEAN CHRISTIAN PLATT, San Diego, CA; JASON G. WINCHESTER, Chicago, IL.

————————————

Before LOURIE, CHEN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Under 28 U.S.C. § 1659(a)(2), a respondent in a proceeding before the United States International Trade Commission may seek to stay a district court action involving the same parties and same issues if the request is made within certain specified time limits.   A stay under § 1659(a)(2) is mandatory and cannot be lifted until the Commission's determination becomes final.   This appeal asks whether a respondent in an ITC proceeding may seek a mandatory stay of its refiled declaratory judgment action involving the same parties even though it had previously filed a declaratory judgment action and missed the deadline for seeking a stay under § 1659(a)(2).   We hold that it may not.

## BACKGROUND

28 U.S.C. § 1659(a) states:

(a) Stay.—In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within—

>    (1) 30 days after the party is named as a re-
>    spondent in the proceeding before the Com-
>    mission, or
>
>    (2) *30 days after the district court action is
>    filed*,

whichever is later.

28 U.S.C. § 1659(a) (emphasis added).

Ascendis[1] and BioMarin Pharmaceutical Inc. are both drug manufacturers developing treatments for children with achondroplasia (ACH), a genetic condition that causes short-limbed dwarfism.  In 2021, BioMarin launched Voxzogo®, a treatment for ACH approved by the Food and Drug Administration.  BioMarin's U.S. Patent No. RE48,267 covers certain C-type natriuretic peptide (CNP) variants, including Voxzogo.

On March 31, 2025, Ascendis filed a New Drug Application (NDA) with the FDA for its drug TransCon® CNP. The next day, on April 1, 2025, BioMarin filed a complaint with the ITC against Ascendis, requesting that the ITC "institute an investigation to remedy the unlawful and unfair importation into the United States, and sale for importation into the United States, of certain drug products containing [CNP] variants . . . that infringe" the '267 patent. J.A. 1029 ¶ 1.  BioMarin alleged that the quantity of TransCon CNP that has been "imported exceeds any quantity that would be solely for uses reasonably related to the development and submission of information to the FDA." J.A. 1041 ¶ 48.  Ascendis responded that TransCon CNP has not been approved by the FDA and that it "has not made, used, offered to sell, sold, or imported its TransCon

---

[1]    "Ascendis" includes Plaintiffs-Appellants here:  Ascendis Pharma A/S, Ascendis Pharma Growth Disorders A/S, and Ascendis Pharma, Inc.

CNP into the United States, other than for reasons directly related to obtaining FDA approval." J.A. 1005 ¶¶ 19–20.

On April 11, 2025, Ascendis filed a complaint for declaratory judgment of non-infringement in the United States District Court for the Northern District of California, asserting, inter alia, that its "manufacture, use, and importation of TransCon CNP" is "exempt from patent infringement liability by the statutory safe harbor" provision in 35 U.S.C. § 271(e)(1). J.A. 2002 ¶ 1; Complaint for Declaratory Judgment, *Ascendis Pharma A/S v. BioMarin Pharm. Inc.*, No. 4:25-cv-03302 (N.D. Cal. Apr. 11, 2025), ECF No. 1 ("*Original Complaint*"). Over thirty days later, on May 29, 2025, Ascendis moved for a speedy hearing on its safe harbor defense. J.A. 2332. In response, BioMarin moved to dismiss or stay the declaratory judgment action pending conclusion of the ITC's investigation, which Ascendis opposed. *See* J.A. 2359; J.A. 2376. Two weeks later, in a full reversal of its position, Ascendis filed a notice of voluntary dismissal without prejudice for purposes of refiling its declaratory judgment action to seek a mandatory stay under § 1659(a)(2). J.A. 2630–31. Specifically, Ascendis explained that it planned to:

> *[R]e-file* a declaratory judgment complaint for non-infringement of [U.S. Patent No. RE48,267], which new action it plans to stay pursuant to the mandatory stay provision of 28 U.S.C. § 1659 in favor of parallel ITC proceedings. Ascendis is filing a new action rather than amending the complaint and moving to stay the instant action in order to avoid any possible dispute about the applicability to the present action (*which has been pending for more than 30 days*) of the mandatory stay provided by that statute.

J.A. 2631 (emphases added).

That same day, Ascendis filed a new declaratory judgment complaint. J.A. 1001–73 ("*Refiled Complaint*"). The

*Refiled Complaint* is nearly identical to the *Original Complaint* except that it pleads non-infringement broadly, which includes the safe harbor defense.  Two weeks later, Ascendis filed a motion for a mandatory stay under 28 U.S.C. § 1659(a)(2).  J.A. 1077.  BioMarin opposed the motion—asserting that Ascendis's request was untimely—and moved for a discretionary stay under *Landis v. North American Co.*, 299 U.S. 248 (1936).  J.A. 1097–1100.  On September 19, 2025, the district court granted BioMarin's motion for a discretionary stay and denied Ascendis's motion for a mandatory stay as moot.  J.A. 4.[2]  Ascendis appeals.

## DISCUSSION

On appeal, Ascendis asserts that the district court erred in denying a mandatory stay under § 1659(a)(2) and that we have jurisdiction under the collateral order doctrine.  Before we can address either question, we must first consider whether Ascendis has Article III standing to bring its appeal before this court.

## I

"We review Article III standing, a threshold jurisdictional issue and a question of law, *de novo*." *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1330–31 (Fed. Cir. 2008) (citations omitted).  "Standing must be met by persons seeking appellate review . . . ." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (cleaned up).  Parties seeking appellate review must show that they

---

[2]  The district court provided an updated order to its original order.  Its original order can be found at *Ascendis Pharma, Inc. v. BioMarin Pharm. Inc.*, No. 4:25-CV-05696-YGR, 2025 WL 2924225 (N.D. Cal. Sept. 9, 2025), but the updated order is not available on Westlaw.  The order was updated to address the parties' stipulation and provide a typographical correction.  J.A. 1 n.1.

have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Because standing is 'an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Canadian Lumber Trade*, 517 F.3d at 1331 (quoting *Lujan*, 504 U.S. at 561). Here, Ascendis bears the burden to show it has standing to appeal the denial of its requested mandatory stay, specifically that it has suffered an injury in fact or a controversy of sufficient immediacy and reality to warrant its requested judicial relief. *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1004 (Fed. Cir. 2018).

Ascendis asserts that it has standing because BioMarin has repeatedly stated that upon FDA approval of TransCon CNP, BioMarin could seek to lift the discretionary stay and pursue a preliminary injunction. Plaintiffs-Appellants' Reply Br. 2–3; Plaintiffs-Appellants' Br. 18. Ascendis contends that this threat is imminent, not speculative. For its part, BioMarin responds that this purported injury to Ascendis is speculative and thus Ascendis lacks Article III standing. Defendant-Appellee's Br. 13. In particular, BioMarin emphasizes that litigation in the district court case prior to conclusion of the ITC proceedings is possible only if: (1) the FDA approves Ascendis's drug, (2) BioMarin seeks to lift the stay, and (3) the district court rejects Ascendis's request for a mandatory stay. *Id.* We ultimately agree with Ascendis.

Had the district court granted Ascendis's request for a mandatory stay under § 1659(a)(2), lifting the stay would

not be an option.  In urging the district court to enter a discretionary stay over a mandatory stay, BioMarin repeatedly emphasized the importance of the district court "retain[ing] the authority to consider whether the stay should be lifted in the future based on changed circumstances," namely FDA approval of Ascendis's drug. J.A. 1146; *see also* J.A. 1112 ("If Ascendis were to then launch its product in the United States without waiting for the ITC's decision, BioMarin might seek to lift the stay and pursue preliminary injunctive relief . . . .").  And Ascendis demonstrated that FDA approval of Ascendis's TransCon CNP product was not speculative, considering that at the time Ascendis refiled its complaint, the FDA had already granted priority review of the NDA and set a goal date of November 30, 2025, for its decision.  Plaintiffs-Appellants' Reply Br. 2–3; *see* J.A. 1005.  While that goal date moved to February 28, 2026, the FDA decision remained imminent because "TransCon CNP . . . ha[d] already undergone clinical trials and [was] near the end of the FDA approval process."  *See* ECF No. 22 at 1 (Ascendis's Rule 28(j) Letter).  Indeed, on February 27, 2026, shortly following oral argument in this appeal, the FDA approved Ascendis's TransCon CNP drug, YUVIWEL®.  *See* ECF No. 34 at 1 (Ascendis's Rule 28(j) Letter).  And shortly after the FDA approval, BioMarin informed Ascendis of its intent to file a motion for a preliminary injunction as soon as March 11, 2026, so that briefing on this issue is concluded before the ITC trial, which is set to begin on April 20, 2026.  *See* ECF No. 35 at 1 (Ascendis's Rule 28(j) Letter).  While the district court could perhaps reconsider its denial of a mandatory stay after lifting the discretionary stay, the point of a mandatory stay under § 1659(a)(2) is to avoid such continued litigation while an ITC proceeding is pending.  Under these circumstances, Ascendis has shown that there exists a controversy of sufficient immediacy and reality to warrant the requested judicial relief.

8    ASCENDIS PHARMA A/S v. BIOMARIN PHARMACEUTICAL INC.

Similar to a threat of being sued for patent infringement, there is sufficient immediacy and reality in BioMarin's threat to seek to lift the discretionary stay and seek a preliminary injunction upon FDA approval of Ascendis's drug. Our decision in *Grit Energy Solutions, LLC v. Oren Technologies, LLC*, 957 F.3d 1309 (Fed. Cir. 2020), is analogous to this case. There, Grit Energy filed an appeal to this court after an *inter partes* review proceeding where the Board determined that Grit Energy failed to meet its burden of showing the challenged claims obvious. *Grit Energy*, 957 F.3d at 1317–18. Oren argued that Grit Energy lacked Article III standing to bring the appeal because "Grit Energy neither committed nor" purportedly "plan[ned] to commit acts that create[d] a sufficient threat of litigation." *Id.* at 1319. Prior to the IPR leading to the appeal, however, Oren had sued Grit Energy for infringing one or more claims of the patent-at-issue. *Id.* at 1317. Oren and Grit Energy later jointly stipulated to dismissal of the infringement action without prejudice. *Id.* We determined that Grit Energy had standing because Oren had previously sued Grit Energy for infringement of the patent-at-issue, and Oren was free to reassert those infringement claims. *Id.* at 1320. Here, the district court granted a discretionary stay, leaving BioMarin free to pursue its previous threat to seek to lift the stay and engage in concurrent litigation during pendency of the ITC proceeding. Based on these circumstances, we hold that Ascendis has demonstrated a controversy of sufficient immediacy and reality to satisfy Article III standing.

## II

We turn next to whether this court has jurisdiction under the collateral order doctrine. This court's appellate jurisdiction is typically limited to "an appeal from a final decision of a district court." 28 U.S.C. § 1295(a)(1); *see also DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1368 (Fed. Cir. 2021). The "collateral order doctrine is a narrow exception to the usual

rule of finality and allows an interlocutory appeal when a trial court's order 'affect[s] rights that will be irretrievably lost in the absence of an immediate appeal.'" *DePuy*, 990 F.3d at 1368 (alteration in original) (citation omitted); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47 (1949). "For the collateral order doctrine to apply, an order must meet three requirements; it must (1) 'conclusively determine the disputed question'; (2) 'resolve an important issue completely separate from the merits of the action'; and (3) 'be effectively unreviewable on appeal from a final judgment.'" *DePuy*, 990 F.3d at 1368 (citation omitted); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988).

We agree with Ascendis that this appeal meets all three requirements of the collateral order doctrine. First, even though the district court expressly held that Ascendis met the statutory requirements for a mandatory stay under § 1659(a)(2), the district court denied the stay, conclusively determining the disputed question. The First Circuit's decision in *Municipality of San Juan v. Puerto Rico*, 919 F.3d 565 (1st Cir. 2019), while not controlling, is instructive. There, while litigation regarding federal court-ordered payments was ongoing, the appellant filed for bankruptcy under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA). *Mun. of San Juan*, 919 F.3d at 568, 571. Under PROMESA, an action or proceeding that commenced or could have been commenced before commencement of the bankruptcy proceeding is automatically stayed. *Id.* at 571. In *Municipality of San Juan*, the district court determined that PROMESA's automatic stay provision did not apply. *Id.* at 573. On appeal, the appellant argued that the First Circuit had jurisdiction because the district court's order denying the stay was a "final, appealable order." *Id.* Citing its decision in *In re Atlas IT Export Corp.*, 761 F.3d 177 (1st Cir. 2014), the First Circuit explained that a denial of relief from a stay conclusively determines the disputed

question when the denial is not "based on circumstances that [were] rapidly changing and on [a] record[ ] that [was] not fully developed." *Mun. of San Juan*, 919 F.3d at 574 (alterations in original) (quoting *In re Atlas*, 761 F.3d at 185). Here, the district court denied Ascendis's motion for a stay under § 1659(a)(2) as moot. J.A. 4. The district court stated that Ascendis had met the statutory requirements for a stay under § 1659(a)(2) but denied the stay and granted a discretionary stay instead. J.A. 3–4. The record was fully developed for purposes of determining whether Ascendis was entitled to a mandatory stay under § 1659(a)(2). Under these circumstances, we conclude that the district court, in effect, conclusively determined the disputed question.

Second, the district court's denial of a stay under § 1659(a)(2) resolves an important issue completely separate from the merits of the underlying action. The underlying action seeks a declaratory judgment of non-infringement, which is separate from the denial of a mandatory stay. BioMarin does not dispute that denying a stay under § 1659(a)(2) is separate from the merits. However, BioMarin asserts that the question of whether § 1659(a)(2) requires the district court to stay the litigation until the ITC's determination becomes final is not an important issue. Defendant-Appellee's Br. 17–18. We disagree. Instead, we agree with Ascendis that granting a discretionary stay and denying a mandatory stay under § 1659(a)(2)—and thereby potentially subjecting Ascendis to dual track litigation—is an important issue. *See Gulfstream*, 485 U.S. at 276 ("[W]e found that an order refusing to proceed with litigation because of the pendency of a similar action in state court satisfies the second . . . prong[] of the [collateral order doctrine]."); *see also In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) ("The purpose of § 1659 is to prevent separate proceedings on the same issues occurring at the same time.").

Third, the district court's order is effectively unreviewable on appeal from a final judgment because a mandatory stay under § 1659(a)(2) is designed to prevent litigation from occurring while an ITC case is pending. This court cannot undo the dual track litigation after entry of a final judgment in district court. This conclusion is supported by our decision in *Princo*, as well as *Municipality of San Juan* and *Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49 (3d Cir. 1991).

In *Princo*, after Philips filed suit against Princo both at the ITC and in district court, Princo petitioned this court for a writ of mandamus ordering the district court to enter a stay under § 1659(a)(2). *Princo*, 478 F.3d at 1350–51. Addressing the requirements for a writ of mandamus, we held that Princo "lacks adequate alternative means to obtain the relief sought" because Princo's right to a stay under § 1659(a)(2) "cannot be vindicated by direct appeal from the ultimate damages determination since § 1659 is designed to prevent the ongoing damages proceedings from occurring at all." *Id.* at 1357 (citation omitted). While Princo sought a writ of mandamus instead of asserting jurisdiction under the collateral order doctrine, our rationale in *Princo* answers the similar question before us: whether the denial of a motion to stay under § 1659(a)(2) is effectively unreviewable on appeal from a final judgment.

Our holding here is also supported by First and Third Circuit precedent. In *Municipality of San Juan*, the First Circuit held that "the [appellant's] protection from litigation under the automatic stay is 'effectively unreviewable on appeal from a final judgment.'" 919 F.3d at 574 (quoting *Gulfstream*, 485 U.S. at 276). Similarly, in *Praxis*, the Third Circuit held that the district court's grant of a limited 45-day stay (as opposed to a 90-day stay requested under a statute) would be "effectively unreviewable on appeal from a final judgment." 947 F.2d at 60–61. The Third Circuit explained that the statutory right to a stay is "'irretrievably lost' absent an immediate appeal." *Id.* at 60.

12    ASCENDIS PHARMA A/S v. BIOMARIN PHARMACEUTICAL INC.

Because Ascendis has demonstrated that the three requirements of the collateral order doctrine are satisfied, we conclude that this court has appellate jurisdiction over this matter.

III

Having resolved the issues of standing and jurisdiction, we turn to the merits and address whether the district court erred in denying Ascendis's motion for a mandatory stay under § 1659(a)(2). We determine that any error by the district court was harmless.

After entering a discretionary stay, the district court denied Ascendis's motion as moot. We do not agree that a temporary stay necessarily renders a stay under § 1659(a)(2) moot. Consistent with our analysis above, we conclude that a discretionary stay that can be lifted should circumstances change is not the same as—and thus does not moot—a request for a mandatory stay that cannot be lifted until a final decision in the ITC proceedings. That the district court can lift a discretionary stay is a significant difference between the relief granted and the relief Ascendis sought. Accordingly, the grant of a discretionary stay did not moot Ascendis's request for a mandatory stay under § 1659(a)(2).

The district court's error in this regard was nonetheless harmless, however, because we hold that Ascendis was not entitled to a mandatory stay under § 1659(a)(2).[3] We interpret the statutory text—"the district court action is filed"—under the backdrop of the common law. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles."). This

---

[3]    Per the parties' statutory interpretation arguments, our analysis is limited to the filing date of the *Refiled Complaint*.

includes the common-law principle that "prohibits the use of voluntary dismissal as an indirect way to avoid the explicit requirements of other rules." *See, e.g.*, *Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997). There, Ms. Russ filed suit in Arizona Superior Court but failed to make a jury demand. *Russ*, 120 F.3d at 989. Several months later, after the case was removed to federal court, Ms. Russ moved to dismiss the action without prejudice. *Id.* The district court granted the motion "so that plaintiff, who failed to make a timely demand for jury trial, may refile the same claims in the United States District Court for the District of Arizona, and make a timely demand for jury trial." *Id.* On appeal, the Ninth Circuit reversed, holding that a party should not "use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules." *Id.* (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)). The Third Circuit's decision in *Walton* is also instructive, as it held that the filing of two complaints "will cause no harm provided that the district court carefully [e]nsures that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights it would have otherwise enjoyed." 563 F.2d at 71. And the Tenth Circuit's decision in *Cook v. Rocky Mountain Bank Note Co.* echoes the same principle, as it prohibited a plaintiff from "undermin[ing] the requirements of Rule 54(b) by seeking voluntary dismissal [without prejudice] of her remaining claims and then appealing the claim that was dismissed with prejudice." 974 F.2d 147, 148 (10th Cir. 1992).

Applying this principle, we conclude, under the circumstances here, that "the district court action" in § 1659(a)(2) refers to Ascendis's original action, not its refiled action regardless of whether it voluntarily dismissed the original action without prejudice. Ascendis voluntarily dismissed the *Original Complaint* and filed a virtually identical *Refiled Complaint* in an attempt to restart the 30-day

deadline under § 1659(a)(2).[4]  *See* J.A. 2631 ("Ascendis is filing a new action rather than amending the complaint . . . in order to avoid any possible dispute about the applicability to the present action (which has been pending for more than 30 days) of the mandatory stay . . . ."). These circumstances fit squarely within the common-law principle of prohibiting the use of voluntary dismissal to accomplish indirectly what cannot be accomplished directly.

Ascendis argues that reliance on *Russ* is misplaced because the plaintiff there "voluntarily dismissed the complaint to avoid its 'inadvertent failure to request a jury trial,' which is not permitted under Rule 39(b)" of the Federal Rules of Civil Procedure. Plaintiffs-Appellants' Reply Br. 12 (quoting *Russ*, 120 F.3d at 989). While *Russ* involved a different rule with a different timeline requirement, Ascendis, as in *Russ*, voluntarily dismissed its complaint without prejudice for purposes of circumventing the explicit requirements of other rules, here to restart the 30-day clock under § 1659(a)(2). *See* J.A. 2631. Although the plaintiff in *Russ* missed her deadline through inadvertence, Ascendis seeks to avoid its prior strategic decision to not request a mandatory stay within 30 days. This distinction does not make Ascendis's position more compelling.

Ascendis also argues that if Congress intended to prohibit respondents from refiling to seek a statutory stay under § 1659(a)(2), it would have included express language to that effect in the statute. To support this argument, Ascendis points to the removal statute, 28 U.S.C. § 1446(b), and how it refers to an "initial" pleading and an "amended" pleading.  *See*  Oral  Arg.  at 13:14–15:03, https://cafc.uscourts.gov/oral-arguments/26-1026_0209202

---

[4]    In both complaints, Ascendis asserted the same request for a declaratory judgment of non-infringement about the same product and the same patent. *Compare Original Complaint, with Refiled Complaint*.

6.mp3. According to Ascendis, because § 1659(a)(2) broadly states that a request for a stay must be made within "30 days after the district court action is filed," 28 U.S.C. § 1659(a)(2), instead of "initially" filed or the like, § 1659(a)(2) is intended to refer to the "current action," whether the current action is an initial action or a refiled action. Oral Arg. at 14:23–15:03.

We are not persuaded. Congress's reference to the "initial pleading" and "amended pleading" in the removal statute serves an important purpose. Section 1446(b)(1) states that a notice of removal "shall be filed within 30 days after the receipt . . . of the initial pleading." 28 U.S.C. § 1446(b)(1). But Congress understood that a party might not discover that a case should be removed until after the initial pleading. And § 1446(b)(3) addresses this situation, stating that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Here, in contrast, if a party does not know of a concurrent ITC proceeding 30 days after the district court action is filed, it would be because that party has not yet been named as a respondent in an ITC proceeding. Congress included other language in § 1659(a)(1)— "30 days after the party is named as a respondent in the proceeding before the Commission"—to address this scenario. As such, we find it too speculative to infer that Congress's use of the term "filed" instead of "initially filed" means that Congress intended for respondents to be able to refile their declaratory judgment action to get around the 30-day deadline in § 1659(a)(2).

Finally, legislative history also supports our view that respondents should not be able to refile a declaratory judgment action to avoid compliance with the 30-day deadline. The House Report introducing the ITC legislation states that the 30-day deadlines in § 1659(a) serve the important

16    ASCENDIS PHARMA A/S v. BIOMARIN PHARMACEUTICAL INC.

purposes of avoiding abuse and encouraging prompt adjudication:

> Parallel proceedings.–Section 321(b)(1) adds a new section in Title 28 to address the possibility that infringement proceedings may be brought against imported goods in two forums at the same time. The new section requires a district court hearing an infringement case to stay its proceedings, at the request of a respondent in a section 337 proceeding, with respect to any claim that involves the same issues as those pending before the Commission. Such issues would include questions of patent validity, infringement, and any defenses that might be raised in both proceedings. The district court may use its discretionary authority to stay any other claims in the action before it. *To avoid abuse of this provision and to encourage prompt adjudication in the district courts, any request for a stay must be made within 30 days after the defendant in a district court action is effectively served or 30 days after a party is formally named as a respondent in a Commission action, whichever is later.*

H.R. Rep. No. 103-826(I), at 141–42 (1994) (emphasis added). An interpretation that would allow Ascendis to refile its complaint to get around the 30-day deadline does not "avoid abuse" or "encourage prompt adjudication."

We thus affirm the district court's decision denying Ascendis's motion for a mandatory stay under § 1659(a)(2).

CONCLUSION

We have considered the parties' remaining arguments, and we find them unpersuasive. We affirm the district court's decision.

**AFFIRMED**